IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

<pre>
                                  *
CORSAIR SPECIAL SITUATIONS
FUND, L.P.,                       *

     Plaintiff,                   *

v.                                *     CIVIL NO.: WDQ-06-2081

ENGINEERED FRAMING SYSTEMS,       *
INC., et al.,
                                  *
     Defendants.
                                  *


*    *    *    *    *    *    *    *    *    *    *    *    *
</pre>

MEMORANDUM OPINION

Corsair Special Situations Fund, L.P. ("Corsair"), has sued
Engineered Framing Systems, Inc. ("EFS"), John J. Hildreth, and
Marie Noelle Hildreth (the "Hildreths") for breach of contract of
loan and guaranty agreements and replevin of collateral.  Pending
are: (1) Corsair's motion to dismiss the Defendants'
Counterclaim; (2) the Defendants' motion to amend their
Counterclaim; (3) Corsair's motion to strike the Defendants'
notice of removal and consolidation of an action to foreclose on
the Hildreths' home; and (4) the Defendants' motion to enjoin
Corsair from pursuing the foreclosure.  For the following
reasons: (1) Corsair's motion to dismiss will be granted; (2) the
Defendants' motion to amend will be denied; (3) Corsair's motion
to strike will be granted; and (4) the Defendants' motion for
preliminary injunctive relief will be denied.

1

I.  Background

    On February 9, 2005, Corsair, a Delaware limited
partnership, entered into a loan and security agreement with EFS,
a Maryland corporation in the business of manufacturing and
erecting building materials.  Compl. Ex. 1 (the "Loan Agreement"
or "LA") 1.  On the same day the Hildreths--EFS's president and
his wife--executed a guaranty agreement, in which they guaranteed
EFS's obligations to Corsair under the Loan Agreement and granted
Corsair a mortgage on their home at 7811 Fieldstone Court,
Ellicott City, Maryland.  Compl. Ex. 1, Ex. D. (the "Guaranty
Agreement" or "GA," and with the Loan Agreement, the
"Agreements") ¶¶ 1, 13.

    Under the Loan Agreement, Corsair agreed to lend EFS
$3,250,000 to be repaid with 18% interest within four years.  *Id*.
¶¶ 1, 2.1.  The collateral for securing the loan included all of
EFS's current and after-acquired assets, including its accounts,
equipment, inventory, and proceeds.  *Id*. ¶ 1.  The Loan Agreement
specifies that "[t]he Loan is not a revolving credit facility and
may not be drawn, repaid, and redrawn."  *Id*. ¶ 2.1.  It also
states that "[a]t any time prior to the Maturity Date, Corsair
may, at its discretion, agree to increase the size of the Loan by
advancing to [EFS] additional amounts pursuant to the terms of
this [Loan] Agreement."  *Id*.  Accordingly, Corsair alleges that
it lent EFS an additional $814,717.22 pursuant to written "Loan

2

Advance Agreements" executed in April, May, July, and August 2005.  Pl.'s Mem. in Supp. of its Mot. to Dismiss 3.

On August 10, 2006, Corsair filed its Complaint, claiming contract damages of $5,208,523.22 for EFS's default under the Loan Agreement and the Hildreths' refusal to perform under the Guaranty Agreement, and replevin of its collateral under the Loan Agreement.

The Defendants admit that EFS is in default of the Loan Agreement, but allege that the default has been caused by Corsair's tortious conduct.  Answer ¶ 17.  The Defendants' Counterclaim lists the following causes of action:

(Count 1) undue control of EFS;

(Count 2) breach of fiduciary relationship;

(Count 3) fraud;

(Count 4) breach of implied duty of good faith and fair dealing;

(Count 5) tortious interference with contract and economic advantage;

(Count 6) lender liability; and

(Count 7) fraud in the inducement.

II.  Discussion

A.  Corsair's Motion to Dismiss for Failure to State a Claim

1.  Standard of Review

Under Federal Rule of Civil Procedure ("Rule") 12(b)(6), a motion to dismiss should be granted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002), (*citing Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)); *Mylan Laboratories, Inc. v. Raj Matkari, et al.*, 7 F.3d 1130, 1134 (4th Cir. 1993).  All allegations are treated as true, and the complaint is viewed in the light most favorable to the plaintiff.  *Mylan*, 7 F.3d at 1134.

In deciding a Rule 12(b)(6) motion, the court will consider the facts stated in the complaint and any incorporated documents. *Biospherics, Inc., v. Forbes, Inc.*, 989 F. Supp. 748, 749 (D. Md. 1997), *aff'd*, 151 F.3d 180 (4th Cir. 1998)).  The court may also consider documents referred to in the complaint and relied upon by the plaintiff in bringing the action.  *Id*.

2.  Choice of Law:

"A federal court sitting in diversity must apply the choice-of-law rules from the forum state." *Wells v. Liddy*, 186 F.3d 505, 521 (4th Cir. 1999) (*citing Klaxon Co. v. Stentor Elec. Mfg.*

*Co.*, 313 U.S. 487, 496-97 (1941).  The Defendants' claims arise out of a lender-borrower relationship created by contract. Maryland recognizes that "the parties to a contract may agree as to the law which will govern their transaction, even as to issues going to the validity of the contract."  *Kronovet v. Lipchin*, 288 Md. 30, 43 (1980).  In this case, the Agreements contain nearly identical choice-of-law clauses that provide:

> The validity of [the Agreements], [their] construction, interpretation, and enforcement and the rights of the parties hereto shall be determined under, governed by and construed in accordance with the internal laws of the State of New York, without regard to principles of conflicts of law.

LA ¶ 15; GA ¶ 10.

Although the Court should apply New York law to determine the parties' rights and duties under the Agreements, most of the Defendants' claims sound in tort, not contract.  In Maryland, whether a choice-of-law provision applies to contract-related tort claims is governed by the intent of the parties, as evidenced by the plain language of the contract.  *Superior Bank, F.S.B. v. Tandem Nat. Mortgage, Inc.,* 197 F. Supp. 2d 298, 309 (D. Md. 2000) (*citing Kronovet v. Lipchin*, 288 Md. 30, 47-50 (1980)).  Although in their pleadings the parties presume New York law applies to the Defendants' tort claims,[1] their choice-of-law clause only indicates an intent to apply New York law to

---

[1] Corsair also cites Maryland law in footnotes accompanying its legal arguments.

their rights and duties under the Agreements.  Therefore the
Court will apply Maryland's choice-of-law principles to the
Defendants' tort claims.

"For tort claims, Maryland adheres to the First Restatement
of Conflict of Laws rule, *lex loci delicti commissi*, or the law
of the place of the harm, to determine the applicable substantive
law." *Wells*, 186 F.3d at 521 (*citing Naughton v. Bankier*, 114
Md. App. 641, 649 (Md. Ct. Spec. App. 1997); *Hauch v. Connor,* 295
Md. 120, 123-24 (1983).  If a tort takes place in more than one
jurisdiction, the locus of the tort is the place where the final
act required to complete the wrong, the injury, was suffered.
*Philip Morris Inc., v. Angeletti*, 358 Md. 689, 745-47 (2000).
The Maryland Courts of Appeal have not provided specific guidance
on where pecuniary wrongs are suffered.  *See Cremi v. Brown*, 955
F. Supp. 499, 522 (D. Md. 1997); *Philip Morris*, 358 Md. at 750
n.28.  However, considering that EFS is a Maryland corporation,
its principal place of business is in Maryland, and the Hildreths
are domiciled in Maryland, the Court finds that the impact of the
alleged harm to EFS's business and the Hildreths' personal
finances is most probably felt in Maryland than elsewhere.

Thus the Court will apply New York law to the "construction,
interpretation, and enforcement and the rights of the parties"
under the Loan and Guaranty Agreements, and Maryland law to
evaluate the Defendants' tort claims.

3.  The Defendants' Claims

    For efficiency, the Court will evaluate each Count as it
currently stands and as it might be bolstered by the proposed
amendment.


a.  Undue Control (Count 1) and Lender Liability (Count 6)

    Corsair argues that there is no independent cause of action
for either undue control (Count 1) or lender liability (Count 6)
under New York or Maryland Law.  The Defendants apparently
concede this point, as they only argue in opposition that Counts
2-5 and 7 state causes of action, and move to remove Counts 1 and
6 in their proposed amended counterclaim.  Defs.' Resp. Ex. 1.
Accordingly, Counts 1 and 6 of the Defendants' Counterclaim will
be dismissed.


b.  Breach of Fiduciary Duty (Count 2)

    "[A]lthough the breach of a fiduciary duty may give rise to
one or more causes of action, in tort or in contract, Maryland
does not recognize a separate tort action for breach of fiduciary
duty."  *Int'l Bhd. of Teamsters v. Willis Corroon Corp. of Md.*,
369 Md. 724, 728 n.1, (2002) (*citing  Kann v. Kann*, 344 Md. 689,
713 (1997) ("there is no universal or omnibus tort for the
redress of breach of fiduciary duty")).  Accordingly, Count 2 of
the Defendants' Counterclaim will be dismissed.

c.  Fraud (Count 3) and Fraud in the Inducement (Count 7)

The Defendants's Counts 3 and 7 are duplicative claims that Corsair made false promises to induce the Defendants to pledge their assets as collateral, including the Hildreths' personal assets in the Guaranty Agreement.[2]  The Defendants base these causes of action on allegations that Corsair made false promises to "continue to finance the needs of EFS in an orderly manner" while "never intend[ing] to carry out their commitment as a lender in good faith."  Counterclaim ¶¶ 27, 42.  In response to Corsair's argument that their fraud claims are not pled with particularity pursuant to Rule 9(b),[3] the Defendants allege in their proposed amended counterclaim that the false promises were made by Corsair's representatives, Ronald Buck and Charlie Cheever, during the negotiation of the Loan Agreement.  Defs.' Resp. Ex. 1 ¶ 24.

Maryland recognizes an action for fraud involving a

---

[2] The Defendants seek to merge Counts 3 and 7 into one count in their proposed amended counterclaim.

[3] "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). "[T]he 'circumstances' required to be pled with particularity under Rule 9(b) are 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (*quoting* 5 Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure: Civil § 1297 at 590 (2d ed. 1990)).

"deliberate misrepresentation of . . . existing intentions, where the misrepresentation was material to the transaction giving rise to the alleged fraud." *Alleco, Inc. v. Harry & Jeanette Weinberg Found.*, 340 Md. 176, 197 (1995). According to Maryland's Court of Appeals:

> The gist of the fraud in such cases is *not the failure to perform the agreement*, but the fraudulent intent of the promisor, the false representation of an existing intention to perform where such intent is in fact non-existent, and the deception of the promisee by such false promise.

*Tufts v. Poore*, 219 Md. 1, 12 (1959) (emphasis added).

But the Defendants' averments of fraudulent promises made prior to the Execution of the Loan Agreement are defeated by the Loan Agreement's merger clause, which provides:

> 14.6  *Amendments in Writing*.  This [Loan] Agreement cannot be changed or terminated orally.  Any modification to the [Loan] Agreement must be effected by a written instrument executed by each of the parties hereto.  This Agreement is the entire agreement between the parties with respect to the matters contained herein.  *This [Loan] Agreement supercedes all prior agreements, understandings and negotiations, if any, all of which are merged into this Agreement.*

LA ¶ 14.6 (emphasis added).  Any "prior agreements, understandings [or] negotiations" in which Corsair may have falsely promised EFS continuous need-based financing were superceded by the Loan Agreement, which clearly limited Corsair's lending obligation to the $3,500,000 it has already provided to EFS.  Accordingly, the Defendants fail to allege facts that state a claim for fraud, and Counts 3 and 7 will be dismissed.

d.  Breach of Implied Duty of Good Faith and Fair Dealing (Count 4)

"In New York, breach of the implied duty of good faith and fair dealing is merely a breach of the underlying contract," thus the Court will apply New York Law to evaluate the Defendants' claim in Count 4.  *Nat'l Mkt. Share, Inc. v. Sterling Nat'l Bank, Inc.*, 392 F.3d 520, 525 (2d Cir. 2004) (internal quotation marks omitted).  The duties implied by law in a contract include "any promises which a reasonable person in the position of the promisee would be justified in understanding were included."  *Dalton v. Educational Testing Serv.*, 87 N.Y.2d 384, 389 (N.Y. 1995) (internal quotation marks omitted).  As further stated in *Dalton*:

> This embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.  Where the contract contemplates the exercise of discretion, this pledge includes a promise not to act arbitrarily or irrationally in exercising that discretion. The duty of good faith and fair dealing, however, is not without limits, and *no obligation can be implied that would be inconsistent with other terms of the contractual relationship*.

*Id*. (internal citations and quotation marks omitted) (emphasis added).

The Court agrees with Corsair that the Defendants' Count 4 in the Counterclaim is "cryptic at best," as it merely incorporates by reference the preceding allegations in the Counterclaim; but even if amended as proposed, the Defendants'

10

Count 4 fails to allege facts that state a claim for relief.  The proposed amended counterclaim makes clear that "[b]ased on Corsair's aforementioned promises, EFS reasonably believed that Corsair would continue to finance the needs of EFS in an orderly manner following the execution of the Loan Agreement."  Defs.' Resp. Ex. 1 at 30.  As stated above, any promises that Corsair made in the negotiation stage were superceded by the Loan Agreement.  The Defendants received what they bargained for, i.e., $3,500,000, and were lent another $814,717.22 at Corsair's discretion.  The additional duties that the Defendants wish to impose on Corsair are inconsistent with the terms of the Loan Agreement.

The Defendants' assertions that any business, under advice of counsel, could reasonably believe that a for-profit lender[4] would commit itself to such continuous need-based financing, despite contrary terms in the loan agreement, or that a lender's decision to sue for its right to payment is "the very definition of 'irrational,'" are incredible.  Accordingly, Count 4 will be dismissed.


e.  Tortious Interference with Business Relations (Count 5)

Maryland recognizes a tort of interference with business relationships that falls into one of two categories: (1)

---

[4] Especially one that assumes the name "Corsair."

interference that induces a breach of contract; and (2) interference that wrongfully interferes with an economic relationship. *Macklin v. Robert Logan Assocs.*, 334 Md. 287, 297, (1994); *Natural Design, Inc. v. Rouse Co.*, 302 Md. 47, 69 (1984).

In the Counterclaim the Defendants again merely incorporate the preceding allegations by reference and conclude that "Corsair intentionally and maliciously sought to disrupt the ongoing business of EFS;" so, the Court looks to the proposed amended counterclaim for further hints of the Defendant's basis and specific cause of action.  There the Defendants allege that Corsair caused EFS to lose *future* contracts by: (1) "the tortious conduct previously alleged;" and (2) this suit--"most specifically in its bad faith attempt to replevin wall panels that Corsair knew or had reason to know were the property of AJD, [EFS's customer]."  Defs.' Resp. Ex. 1 ¶¶ 8, 37.

As alleged, the Defendants claim the second category of the tort: tortious interference with an economic relationship, the elements of which are:

> (1) intentional and wilful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss resulting.

*Berry & Gould, P.A. v. Berry*, 360 Md. 142, 152, (2000).  The conduct that interferes must be "independently wrongful or unlawful . . . apart from its effect on the [opposing party's]

12

business relationships," e.g., "violence or intimidation, defamation, injurious falsehood or other fraud, violation of criminal law, and the institution or threat of groundless civil suits or criminal prosecutions in bad faith." *Id*. (internal quotation marks omitted).

As stated above, the Defendants have failed to allege facts of tortious or unlawful conduct by Corsair. They have also admitted default on their obligations under the Loan Agreement, thus Corsair's suit for breach of contract and replevin of collateral cannot be deemed groundless or in bad faith. Moreover, as a secured party after default, Corsair has a right to replevin inventory collateral in which it has a perfected security interest unless a purchaser of the inventory can prove that it is a buyer in the ordinary course of business. N.Y. Uniform Commercial Code §§ 9-320, 9-601; *See, e.g. U.S. For and on Behalf of Maritime Admin. v. Cont'l Ill. Nat. Bank and Trust Co. of Chi.,* 889 F.2d 1248, 1254 (2d Cir. 1989) (purchaser has the burden of proving that it is a buyer in the ordinary course); *In re Gary Aircraft Corp.*, 681 F.2d 365, 373 (5th Cir. 1982), *cert. denied*, 462 U.S. 1131 (1983) (same).

In this case, when the Defendants produced evidence that AJD was a buyer in the ordinary course of business of the steel panels at issue, Corsair withdrew its request for immediate replevin. Without an allegation of independently wrongful

13

conduct, Count 5 fails to state a claim for tortious interference, and will be dismissed.

B.  The Defendants' Motion to Amend their Counterclaim

Under Rule 15(a), after a responsive pleading has been served by the adverse party, a party may amend its pleading "only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."  "The law is well settled that leave to amend a pleading should be denied *only when* the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile."  *Edwards v. City of Goldsboro,* 178 F.3d 231, 242 (4th Cir. 1999) (internal quotation marks omitted).  A proposed amendment to a counterclaim is futile if it would not withstand a motion to dismiss under Rule 12(b)(6). *Classen Immunotherapies, Inc., v. King Pharmaceuticals, Inc.*, 403 F. Supp. 2d 451, 459 (D. Md. 2005); *see also Perkins v. United States*, 55 F.3d 910, 916-17 (4th Cir. 1995).

As discussed above, even if amended as proposed, the Defendants' Counterclaim would still fail to state a claim upon which relief can be granted.  Accordingly, the Defendants' motion to amend will be denied.

14

C.  Corsair's Motion to Strike

Federal Rule of Civil Procedure 12(f) allows a district court to "order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).

On October 11, 2006, substitute trustees, who the Defendants allege are agents of Corsair, commenced a foreclosure action against the Hildreths' home in the Circuit Court for Howard County, Maryland.  On October 13, the Defendants filed a "Notice of Removal and Consolidation" to effect the removal and consolidation of the state foreclosure action into this case.

On October 20, Corsair filed a motion to strike the notice of removal, arguing, *inter alia*, that the Defendants, as citizens of Maryland, had no statutory right to remove a case brought in their own state.

"When a plaintiff files in state court a civil action over which the federal district courts would have original jurisdiction based on diversity of citizenship, the defendant or defendants may remove the action to federal court, 28 U.S.C. § 1441(a), *provided that no defendant 'is a citizen of the State in which such action is brought*,' § 1441(b)."[5]  *Caterpillar Inc. v.*

---

[5] § 1441 provides, in relevant part:

(a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original

15

*Lewis,* 519 U.S. 61, 68-69 (1996) (emphasis added).

Even if the Defendants are correct in asserting that the Court would have diversity jurisdiction over the matter under 28 U.S.C. § 1332, they have ignored § 1441(b)'s limitation of removal to cases in which *none* of the *defendants* is a citizen of the state in which the action is brought.  28 U.S.C. § 1441(b). The Defendants have no right to either remove the state action under § 1441 or instantly consolidate it with this case by mere notice to the Court.  Accordingly, Corsair's motion to strike will be granted.

D.  The Defendants' Motion to Enjoin Foreclosure

Along with their notice of removal and consolidation, the Defendants have filed a motion to preliminarily enjoin Corsair from pursing the foreclosure action while this suit is pending.

_____

jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.  For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded.

(b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties.  *Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.*

28 U.S.C. § 1441 (emphasis added).

With limited exceptions, federal courts have been prohibited from enjoining state court proceedings since Congress passed the Anti-Injunction Act in 1793.  *Atl. Coast Line R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 282 (1970).  Presently this prohibition is codified in 28 U.S.C. § 2283:

> A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

28 U.S.C. § 2283.  The purpose of this ancient rule is "to prevent needless friction between state and federal courts." *Okla. Packing Co. v. Okla. Gas & Elec. Co.*, 309 U.S. 4, 9 (1940). A federal court may not evade this prohibition by addressing an injunction to a party rather than directly to the state court. *Atl. Coast Line R. Co.*, 398 U.S. at 287.

As the state foreclosure action fails to fall within a recognized exception to the prohibition in § 2283, this Court lacks the power to grant the requested injunction.  Accordingly, the Defendants' motion for a preliminary injunction will be denied.


III.  Conclusion

For the reasons stated above, Corsair's motion to dismiss the Defendants' Counterclaim will be granted, the Defendants' motion to amend their Counterclaim will be denied, Corsair's motion to strike the Defendants' notice of removal and

17

consolidation will be granted, and the Defendants' motion for

preliminary injunction of the state-court foreclosure action will

be denied.


December 21, 2006                          /s/
Date                             William D. Quarles, Jr.
                                 United States District Judge